143 So.2d 892 (1962)
ORANGE STATE OIL COMPANY, a Corporation, Appellant,
v.
JACKSONVILLE EXPRESSWAY AUTHORITY and W.C. Berrier, Appellees.
No. D-111.
District Court of Appeal of Florida. First District.
July 12, 1962.
Rehearing Denied September 18, 1962.
McCarthy, Adams & Foote, and Yardley Drake Buckman, Jacksonville, for appellant.
Charles R. Hess and Donald G. Nichols, and David W. Foerster, Jacksonville, for appellees.
*893 WIGGINTON, Acting Chief Judge.
Appellant Orange State Oil Company and appellee W.C. Berrier were defendants in an eminent domain proceeding brought by appellee Jacksonville Expressway Authority. Orange State has appealed from two orders entered in a supplemental proceeding held subsequent to entry of judgment for the purpose of apportioning the compensation award made by the jury.
Berrier was the fee simple owner of a parcel of land in Jacksonville, Florida, which he leased to Orange State for the operation of a gasoline service station business. The Expressway Authority instituted this action in eminent domain to condemn a portion of the land covered by the lease. As a result of the taking in this proceeding it would have been necessary to redesign and construct a new building on the remaining property in order for Orange State to continue utilizing the leasehold estate as a filling station site. The lease contract contained no provision fixing the rights and obligations of the parties in the event of a total or partial taking of the property by eminent domain. Upon learning that Expressway intended to institute this action Orange State wrote a letter to Berrier advising that it had vacated the property and had no desire to reopen the station. The letter expressed Orange State's understanding that the taking by eminent domain would cover approximately one-half of the land and practically the entire service station building, thereby rendering the property unuseable and unsuitable for gasoline service station purposes. Orange State stated its assumption that the institution of the condemnation suit would constitute a cancellation of the lease at which time possession of the property would be returned to Berrier and thereafter no further rentals under the lease would be paid. Orange State offered to cooperate with Berrier in defending the suit and in making claim for such damages as each party would be entitled as a result of the taking. Berrier did not reply to this letter and no further agreement was reached between the parties regarding continuance or termination of the lease. Orange State removed its personal property from the premises and returned possession thereof to Berrier who thereafter exercised exclusive control over the property by repairing the portion of the building not taken, and entering into a new lease agreement with another party for the remaining part of the parcel. Each party filed an answer in the suit claiming compensation for the taking of their property. Upon trial the jury awarded full compensation for the property condemned together with attorneys fees.
After judgment in conformity with the jury's verdict was entered, supplemental proceedings were held for the purpose of apportioning the award of compensation as fixed in the judgment. Upon the evidence adduced an order was entered finding that Orange State had committed an anticipatory breach of the lease contract prior to the institution of this suit and was therefore not the owner of a leasehold estate in the property condemned for which it was entitled to compensation. In addition the trial judge found that even had the lease contract not been breached by the voluntary act of Orange State prior to the institution of the suit, the evidence revealed that the leasehold estate held by Orange State had no compensable value. Berrier was adjudged to be entitled to the entire compensation awarded by the jury.
Upon motions filed by the parties for the taxation of costs incurred in connection with the supplemental proceedings, the trial court entered an order holding as a matter of law that these costs were not taxable against Expressway, and refusing to tax costs in favor of or against either of the defendants, leaving each party to absorb such costs as had been incurred in connection with the supplemental proceedings. It is from the two mentioned orders that this appeal is taken.
Appellant contends that the evidence does not support, but in fact contradicts, *894 the finding by the trial judge that under the circumstances revealed by this record Orange State was guilty of an anticipatory breach of its lease contract with Berrier. Had the entire parcel of land constituting Orange State's leasehold estate been taken in this proceeding, we would be forced to agree that in this respect the trial judge committed error. Considering, however, that the suit constituted only a partial taking of the leasehold estate, we must agree that there is sufficient evidence in the record from which the trial court could have concluded as a matter of law that Orange State had breached its lease contract with Berrier prior to the institution of this suit, and therefore owned no leasehold estate for the appropriation of which it was entitled to compensation.
As alluded to above this proceeding constituted only a partial taking of the leasehold estate. The lease contract contained no provision fixing the rights and obligations of the parties upon the happening of such contingency. The general rule appears to be that a partial taking of a leasehold estate under the power of eminent domain does not constitute an eviction of the lessee and he remains bound to perform the obligations assumed by him under the terms and provisions of the lease. Nothing short of a surrender, a release or an eviction will discharge him from his covenants in this behalf.[1] Even though a lessee may be entitled to a reduction in the reserve rental to the extent that a partial taking has diminished the value of his leasehold estate,[2] he is not privileged to unilaterally declare the lease contract terminated, abandon the leasehold estate and refuse to meet the obligations assumed by him in the lease contract. That the remainder of the property was capable of being utilized for a commercial purpose is established by the evidence which reveals that after the partial taking, Berrier repaired what remained of the existing building and rented the remaining portion of the property to another person.
In the Kanter case the Supreme Court held that where a lease agreement contains mutually dependent executory covenants to be performed on either side, there appears to be no valid reason for refusing to apply the doctrine of anticipatory breach to a repudiation of the contract by the lessee, and in such event the lessor has a right to consider the contract ended insofar as further performance by the lessee of its terms is concerned and may resume possession of the leasehold premises.[3] It has also been held upon the weight of authority that the breach, abandonment or renunciation of a lease by the lessee before the expiration of the term gives the lessor the right to treat the lease as terminated and resume possession, thereafter using the same exclusively for his own purpose.[4]
The record in this case reveals that the lessor Berrier expressed no objection to Orange State's written notification that it was abandoning the property covered by the lease, removing its personal property and electing to pay no further rental under the lease, which declaration of intention occurred prior to the institution of this suit. Although Orange State may not have intended to breach its lease contract, and despite its clearly expressed intention to claim damages for the loss of its leasehold estate, the effect of its voluntary acts, coupled with Berrier's acquiescence thereto, resulted in a surrender by operation of law of the leasehold owned by it. We must hold upon the authorities above noted that the trial court correctly ruled Orange State committed an anticipatory breach of its lease contract which resulted in a surrender of its leasehold estate and forfeiture of whatever rights it might otherwise *895 have had to a portion of the condemnation award.
Appellant further urges that the trial court erred in holding that even had there been no anticipatory breach of their lease, the leasehold estate was of no compensable value. In view of our disposition of the question first above discussed, we find it unnecessary to pass upon the latter question presented for review. Anything we may say regarding the correctness or incorrectness of the trial court's ruling with respect to the proper method of evaluating a leasehold estate would serve no useful purpose and would constitute mere obiter dictum which would have no binding effect on this or any other court. We therefore pretermit any decision on this assignment of error.
Both Orange State and Berrier have assigned as error the trial court's order with respect to the taxation of costs incurred by them in the supplemental proceedings held for the purpose of determining the parties' respective rights to the compensation awarded, and in making an apportionment of the award between them as the circumstances may require. From the record it appears that both Orange State and Berrier incurred certain specified costs for expert witnesses and reporter's fees incident to the supplemental proceedings. In the order appealed the trial court held that no costs incurred by these parties with respect to the preparation and trial of their competing claims to the jury's award at the supplemental hearing held before the court shall be taxed against the Expressway Authority, which determination was made without considering or passing upon the reasonableness of any of the items of costs claimed to have been incurred. The court further held that it would be most equitable to require each of the defendants to bear the burden of the costs respectively incurred by them in and about the supplemental hearing. The motions of Orange State and Berrier for the taxation of costs were respectively denied.
This proceeding in eminent domain was instituted in accordance with the provisions of Chapter 73 of our statutes. The first eleven sections of the chapter outline the steps to be taken in the proceeding, commencing with the institution of the action down to and including the trial and rendition of its verdict by the jury. The next succeeding section of the statute deals with the form of judgment to be entered by the court, and provides that the compensation awarded by the jury shall be determined as a whole, irrespective of the interests of the various parties in the property condemned. It is further provided that the court, upon appropriate petition, shall determine the rights of any owners, lessees, mortgagees, judgment creditors and lien-holders with respect to the compensation awarded each owner by the verdict, and the method of apportionment among the interested parties.[5]
From the foregoing it readily appears that the proceedings contemplated by the chapter relating to eminent domain are to be conducted in two stages. The first stage encompasses the various steps to be taken down to and including the trial and rendition of verdict. The second stage of the proceedings contemplates a hearing by the court after entry of judgment for the purpose of determining the rights and interests of the various parties claiming an interest in the property condemned, and apportioning the award among them. The foregoing procedure is followed by a section of the statute relating to costs of the proceedings. This section provides that "all costs of proceedings shall be paid by the petitioner, including a reasonable attorney's fee to be assessed by the jury, except the cost upon the appeal taken by a defendant, in which the judgment of the circuit court shall be affirmed."[6]
It is noted from the above quoted section of the statute that the legislature has provided for all costs of eminent domain proceedings to be paid by the petitioner. This *896 provision is all inclusive, and contains no exception as to costs incurred after trial. It applies to all such necessary costs as may be incurred by the parties in procuring a final adjudication of their rights, irrespective of whether such costs are incurred during the first or second stage of the proceedings contemplated by the statute.
The Constitution provides that private property may not be appropriated for public use without the payment of just compensation.[7] The judicial history of eminent domain proceedings clearly indicates that the courts have been ever vigilant to fully protect the interest of persons whose property is taken through eminent domain proceedings. It has been held that under the just compensation guarantee of the Constitution the law will not permit the amount awarded an owner to be diminished by the requirement that he bear the cost of employing expert witnesses required to testify on his behalf at the trial. The same rule is applicable to other costs reasonably incurred by owners in defense of this type action. All such fees and costs must be borne by the petitioner.[8]
Under the procedure outlined in the statute only the compensation to be paid for the property as a whole may properly be litigated at the trial before the jury. The statute requires that conflicting claims to the compensation awarded be litigated in a supplemental proceeding to be held subsequent to the trial and entry of judgment. A determination of the respective rights of the parties claimant in the property condemned, and the proper apportionment of the compensation among such claimants in accordance with their respective interests, is an essential and necessary function of the court in an eminent domain proceeding. If the amount of compensation to which conflicting claimants are entitled is diminished by the amount of costs incurred by them in establishing their interests in the compensation awarded for the property, they would not receive the full and just compensation guaranteed them by the Constitution.
In the case now reviewed it is apparent that the dispute between Berrier as owner, and Orange State as leaseholder, would not have arisen except for the institution of this proceeding by Expressway. It was the bringing of this action that precipitated the controversy which made necessary the supplemental proceedings held for the purpose of adjudicating the conflicting claims of these parties to the compensation awarded by the jury. Under such circumstances, it is only fair and equitable that the costs reasonably incurred by these parties in securing an adjudication of their rights under the procedure prescribed by the statute should be borne by the petitioning authority whose action created the controversy. The same result might not be justified as a matter of equity if the sole purpose of the supplemental proceeding is to determine the rights of conflicting claimants upon issues that do not arise as a direct result of the condemnation proceedings and which, unless settled by agreement between such claimants, would have required independent litigation for its determination even had condemnation proceedings not been instituted.
Despite the equitable considerations which might be said to justify or fail to justify the taxation of costs against the condemning authority under varying situations, the public policy of the state with respect to the subject has been fixed by the legislature. By enactment of the statute above discussed the legislature determined as a matter of policy that all costs reasonably incurred in an eminent domain proceeding, whether incident to the preparation and conduct of the trial before the jury, or incident to the supplemental proceedings *897 held subsequent thereto, shall be paid by the petitioning authority. It is our view that the clear and mandatory provision of the statute must be respected and complied with by the trial court in the matter of taxing costs incurred by the parties in a proceeding of this kind.
We therefore hold that the trial judge erred in denying Orange State and Berrier's motions for the taxation of costs against Expressway. The order appealed relating to the taxation of costs is accordingly reversed and the cause remanded for further proceedings consistent with the views expressed herein.
STURGIS and RAWLS, JJ., concur.
NOTES
[1] 2 Nichols on Eminent Domain, § 5.23(3), p. 42.
[2] Orgel on Valuation under Eminent Domain, 2nd Ed., Vol. 1, § 121, p. 521.
[3] Kanter v. Safran, (Fla. 1953) 68 So.2d 553.
[4] Williams v. Aeroland Oil Co., 155 Fla. 114, 20 So.2d 346.
[5] Section F.S. 73.12, F.S.A.
[6] Section F.S. 73.16, F.S.A.
[7] Section 12, Declaration of Rights, Constitution of Florida; Art. XVI, Sec. 29, Constitution of Florida, F.S.A.
[8] Dade County v. Brigham et al. (Fla. 1950), 47 So.2d 602, 18 A.L.R.2d 1221.