KILPS and wife, Appellants, v. PAWINSKI, Respondent.

*April 2—April 27, 1965.*

For the appellants there was a brief by *Rebholz & Duffey*, attorneys, and *F. Thomas Ament* of counsel, all of Milwaukee, and oral argument by *Mr. Ament*.

For the respondent there was a brief by *Teper & Weiss* of Milwaukee, and oral argument by *Daniel J. Weiss*.

WILKIE, J.    The principal issue presented on this appeal is whether condemnation of a portion of the rented property constructively evicted the respondent as lessee.

This is a question of first impression in this state. It is well settled in other jurisdictions that the taking of the entire premises by condemnation operates to terminate the lease and release the tenant from liability to pay rent.[1] In addition, although there is authority to the contrary,[2] the general rule is that a partial taking of a leasehold estate under the power of eminent domain does not amount to an eviction and the lessee remains liable for the rent [3] as long as the land or premises remain susceptible of occupation.[4] The underlying rationale for this general rule is that the lessee, as owner of an estate for years, takes his term as any other interest in land is taken—*i.e.,* subject to the condemnation power of the state.[5] Any loss the tenant suffers is not due to the landlord's action, but is occasioned by an act of the state, against whom the law has provided a remedy.[6]

[1] *E.g., Corrigan v. Chicago* (1893), 144 Ill. 537, 33 N. E. 746; *Chryssoverges v. General Cigar Co.* (1927), 163 La. 364, 111 So. 787; *Board of Levee Commissioners v. Johnson* (1889), 66 Miss. 248, 6 So. 199.

[2] See 2 Nichols, Eminent Domain (3d ed.), p. 67, sec. 5.23 (3).

[3] 2 Nichols, Eminent Domain, ibid.; 1 American Law of Property, p. 288, sec. 3.54; 51 C. J. S., Landlord and Tenant, p. 669, sec. 98; 52 C. J. S., Landlord and Tenant, p. 244, sec. 483; Anno. 163 A. L. R. 679. Recent cases recognizing the rule are: *Orange State Oil Co. v. Jacksonville Expressway Authority* (Fla. 1962), (1st Dist. Ct. of App., an intermediate appellate court), 143 So. (2d) 892; *Batcheller v. Iowa State Highway Comm.* (1960), 251 Iowa 364, 101 N. W. (2d) 30; *Barsamian v. Bernhard* (1955), 140 N. Y. Supp. (2d) 415; *Elliott v. Joseph* (1961), 163 Tex. 71, 351 S. W. (2d) 879; *Newman v. Commonwealth* (1957), 336 Mass. 444, 146 N. E. (2d) 485.

[4] *Pasadena v. Porter* (1927), 201 Cal. 381, 257 Pac. 526; *Gluck v. Baltimore* (1895), 81 Md. 315, 32 Atl. 515, 48 Am. St. Rep. 515.

[5] See *Leonard v. Autocar Sales & Service Co.* (1945), 392 Ill. 182, 64 N. E. (2d) 477; *Stubbings v. Evanston* (1891), 136 Ill. 37, 26 N. E. 577; *Olson Land Co. v. Alki Park Co.* (1911), 63 Wash. 521, 115 Pac. 1083.

[6] A tenant for a term of five years has an interest in the land (see sec. 235.50, Stats.), may be entitled to receive notice of a

It is undisputed, in the instant case, that the only portion of the leasehold estate affected by the condemnation was the parking space; no part of the building proper was involved. The trial court concluded that removing the " 'suitable parking place' provided for in the lease would in a sense prevent the tenant from occupying the premises or at least such a material part of the premises that the remaining portion would not be, in affect [sic], what the tenant leased." [7]

No case has been cited to us nor have we found one in which the mere taking of parking facilities by condemnation (the act of a third party, *i.e.*, the public) constituted an eviction. Condemnation of various portions of leasehold estates has not resulted in lease terminations in the following instances: One half of the land and practically an entire service station building,[8] 8.3 feet of a building which had total frontage of 35 feet,[9] the whole building (for temporary use by the government),[10] one of three tracts of land,[11] a 100-foot swath through a 411-by-192-foot lot used as a coal

jurisdictional offer under sec. 32.05 (4), Stats., and may appeal under sec. 32.05 (9) (a), sec. 32.05 (10), and sec. 32.05 (11), Stats., from a condemnation award. After an award has been finally determined he may petition for partition of the award under sec. 32.05 (9) (a) 3, "[w]hen the owners or parties having an interest in land taken cannot agree on the division of an award . . . ."

[7] The trial court relied on the recent case of *Schaaf v. Nortman* (1963), 19 Wis. (2d) 540, 120 N. W. (2d) 654. That case dealt with a strict landlord-tenant problem wherein the tenant charged that certain acts by his landlord rendered the premises untenantable and constituted constructive eviction. The court, at page 545, held that the "occasional lack of heat and hot water" and other inconveniences of which the tenant complained, were temporary and were "not of sufficient severity or frequency to say that Nortman [the tenant] was deprived of the full use and enjoyment of the leased property for a material period of time."

[8] *Orange State Oil Co. v. Jacksonville Expressway Authority, supra,* footnote 3.

[9] *Pasadena v. Porter, supra,* footnote 4.

[10] *Leonard v. Autocar Sales & Service Co., supra,* footnote 5.

[11] *Olson Land Co. v. Alki Park Co., supra,* footnote 5.

yard,[12] a 3.87-acre piece of a 12.5-acre outdoor movie area,[13] and one tract of four upon which a feed and coal business was operated.[14] These situations are illustrative only, but they do demonstrate that to give rise to an eviction, the condemnation must effectively render the land or premises untenantable for the purposes of the lease.

Respondent operated a beauty parlor. The cause was presented to the trial court on a stipulation of facts that, as pertinent here, recited the provision of the lease as to the parking spaces, and the fact that the condemnation took away those spaces. Nothing was stated as to whether the condemnation of the strip of land utilized as a parking lot for three cars prevented respondent from continuing the business or caused him any loss. Nothing was stated in any respect as to the importance of the parking. Under certain circumstances no doubt parking facilities would be an inherent requirement of the continuation of a business contemplated by the lease, but such an inference cannot be drawn from the limited facts presented here. On the state of the record we believe that the trial court erred in determining that the condemnation took " 'so great a portion of the property' as to 'prevent tenant from occupying premises' [which] resulted in a constructive eviction . . . ."

This is especially true in this instance where, although the condemnation award was recorded in September of 1962, work was not commenced on the highway until April, 1963, just a little over four months before the lease was due to expire. Although on the record here respondent apparently could have had about seven more months of use before he actually would have been deprived of the use of the lot, he

[12] *Stubbings v. Evanston, supra,* footnote 5.
[13] *Elliott v. Joseph, supra,* footnote 3.
[14] *Batcheller v. Iowa State Highway Comm., supra,* footnote 3.

vacated the premises after paying rent through the month of October, 1962. This action of the respondent negates his contention that the lease was terminated because the express covenant to provide three parking places in front of the shop was breached. This case is similar to *Orange State Oil Co. v. Jacksonville Expressway Authority*,[15] where the lessee abandoned the leasehold property prior to the expiration of the lease when he learned that condemnation proceedings, which would ultimately affect the property, were to be instituted. The court held that the lessee had committed an anticipatory breach of the lease contract. So here, if there was any breach of the lease by either party, the breach would be that of the respondent in that he removed his business from appellants' building over seven months before the parking lot became unfit for the purpose intended.

If a condemnation of just part of leased property does not operate to upset a lease of the whole of that property, it must follow that condemnation cannot cause a breach of a lease merely because some particular covenant has been adversely affected.

Respondent argues that because title to the condemned property vested in the condemnor when the damage award was recorded,[16] September 17, 1962, appellants were actually unable after that date to provide the space. However, respondent remained at the site until November 1, 1962, and the record discloses no reason why he could not have stayed until the actual work started. In any event, the fact that title vested in the state at a particular time has no bearing on the question of whether the lease was breached. Not only was this something out of appellants' control, but also since only a part of the leased premises was involved in the

[15] *Supra*, footnote 3.
[16] Sec. 32.05 (7) (c), Stats.

taking, the rule would apply that a partial condemnation does not terminate the lease so long as the premises remain susceptible of occupation for the purposes of the lease. And as we have concluded, the partial taking here did not effectively destroy the operation of the beauty parlor business, did not prevent the tenant from occupying the premises, and accordingly the condemnation did not constitute a constructive eviction.

Since the trial court found that the lease had been terminated, it did not reach the question of rental abatement. The general rule is that when a part of the premises is condemned, the tenant remains liable under his covenant to pay rent since nothing short of a surrender, release, or eviction will discharge him from this covenant.[17] The tenant must look to an apportionment of the damages assessed against the condemning authority based on the reduced value of his lease.[18] Such participation in condemnation proceedings leading to winning part of the award is expressly provided for by statute.[19] Here the tenant did not participate in the condemnation proceedings either directly or on appeal and respondent did not receive his proportionate share of the award.

Although, on the facts as presented here, the partial taking does not constitute a constructive eviction, and although the respondent is not entitled to a partial abatement of his rentals, he has not participated in the condemnation proceedings and

[17] *E.g., Olson Land Co. v. Alki Park Co., supra,* footnote 5; *Yellow Cab Co. v. Stafford-Smith Co.* (1926), 320 Ill. 294, 150 N. E. 670; *Gluck v. Baltimore, supra,* footnote 4; *F. W. Woolworth Co. v. Berlin* (1925), 82 N. H. 153, 130 Atl. 741; *Elliott v. Joseph, supra,* footnote 3; *Parks v. Boston* (1834), 15 Pick. 198, 32 Mass. 198. See also 2 Nichols, Eminent Domain (3d ed.), p. 69, sec. 5.23 (3).

[18] *Elliott v. Joseph, supra,* footnote 3; *Olson Land Co. v. Alki Park Co., supra,* footnote 5.

[19] *Supra,* footnote 6.

presumably the appellants have received whatever compensation has been awarded for the loss of the parking spaces. The parties apparently agree that the taking was legal in all respects. The respondent should receive some relief for the taking that has affected his tenancy.

Presumably the way is still open for the tenant to commence a partition action to gain part of the award.[20] We could reverse and order judgment on the complaint without any allowance to the respondent, leaving him to pursue his partition remedy. However, in this particular case we believe it better procedure to remand the cause for further proceedings under which the trial court first can determine that sum to which the respondent would be entitled as his portion of the award resulting from the condemnation of part of the rented property (the three parking spaces) during the period from the date when these spaces were physically made unavailable (presumably April 15, 1963), until the end of the lease (August 31, 1963), and then credit this sum against the unpaid rent payments due under the lease.

*By the Court.*—Judgment reversed, and cause remanded for proceedings consistent with this opinion. Costs on this appeal to appellants.

---

[20] See sec. 32.05 (9) (a) 3, Stats., under footnote 6, *supra.*