537 So.2d 619 (1988)
R.O. KNEPPER and David Knepper, Appellants,
v.
GENSTAR CORPORATION, a Foreign Corporation, Nitrochem, Inc., a Foreign Corporation and Nitrochem Energy Corporation, a Foreign Corporation, Appellees.
No. 88-440.
District Court of Appeal of Florida, Third District.
December 20, 1988.
Rehearing Denied February 15, 1989.
*620 R. Stuart Huff, Coral Gables, for appellants.
Ruden, Barnett, McClosky, Smith, Schuster & Russell and John H. Pelzer, Fort Lauderdale, Magill & Lewis and Fred Lewis, Miami, for appellees.
Before BARKDULL and NESBITT, JJ., and GOMEZ, HELIO, Associate Judge.
PER CURIAM.
R.O. Knepper and his son, David, seek reversal of an order awarding the defendants a new trial on damages upon the failure of the Kneppers to accept a remittitur of both compensatory and punitive damages. Genstar Corporation, by cross-appeal, seeks the reversal of the order denying its motion for new trial as to liability. Nitrochem, Inc. and Nitrochem Energy Corporation joined Genstar in the cross-appeal and additionally request that, in the event of reversal for a new trial as to liability, the trial court be directed to instruct the jury as to their separate defenses of qualified privilege against the Kneppers' defamation claim.
For the reasons discussed, we find that the trial court erroneously denied defendants' motion for new trial as to liability. However, we disagree with the remaining defendants' claims and find that the trial court correctly left to the jury the issues of qualified privilege, joint venture, and punitive damages. Our disposition of the matter pretermits the need to discuss the Kneppers' main appeal.
R.O. Knepper and his son David sought damages for defamatory statements allegedly made by certain agents or employees of Genstar, Nitrochem, and Nitrochem Energy. R.O. Knepper, having worked in the explosives industry for over twenty-five years selling explosives and implementing their on-site use, had established a large clientele. As a new company, Nitrochem employed both R.O. and David for approximately eighteen months, until both Kneppers returned to their former employer, Atlas Powder Company. As a result of *621 that move, Nitrochem's business suffered severely. Subsequent to their departure, several conversations occurred between Atlas executives and the executives of Nitrochem. The thrust of those exchanges, according to the Kneppers, was Nitrochem's allegations that R.O. and David had vandalized Nitrochem equipment. The Kneppers alleged that the defamatory statements had been made by employees, officers, or agents of Nitrochem or Nitrochem Energy, a wholly owned subsidiary of Nitrochem; they further alleged that Nitrochem represented a Genstar joint venture.
The Kneppers' action for defamation proceeded to trial. The jury returned verdicts finding all defendants liable for defamation and finding Genstar and Nitrochem co-venturers. R.O. was awarded compensatory and punitive damages totalling $260,000 against defendant Genstar Corp., $290,000 against Genstar and Nitrochem jointly and severally, and $150,000 against Nitrochem Energy. Plaintiff David Knepper was awarded compensatory and punitive damages totalling $251,000 against defendant Genstar, $254,000 against Genstar and Nitrochem jointly and severally, and $105,000 against defendant Nitrochem Energy.[1]
The judge, upon post trial motions, ordered remittitur or in the alternative a new trial, finding that the awards to the Kneppers had been motivated by passion, prejudice, gross mistake, and inflammatory argument. We agree that various errors occurred in the course of the trial which, in total, created an inappropriate positive image of the Kneppers and an equally inappropriate negative image of the defendants, and for that reason, we order a new trial as to liability for both punitive and compensatory damages as to each plaintiff.
The chief error and basis for reversal of the jury's awards was the improper use of testimony concerning polygraph examinations. Where the individual circumstances of a case dictate that the jury must have inferred the results of a polygraph examination, admission of the evidence is reversible error. Kaminski v. State, 63 So.2d 339 (Fla. 1952); Southern Bell Tel. & Tel. Co. v. Roper, 438 So.2d 1046 (Fla. 3d DCA 1983). In the instant case, each plaintiff was permitted to state that he was asked to take a polygraph examination. Next, in response to defense counsel's questioning, R.O. went further and stated that he had in fact taken the test. Additionally, the president of Atlas testified that if there was any doubt in his mind as to R.O.'s involvement with the vandalism, Atlas would have terminated R.O. Here, the plain inference of the testimony adduced at trial was that the results of the polygraph test were favorable to R.O. Knepper.
Various employers have commenced using polygraph examinations as a means of screening prospective employees. This practice is well known enough that it was likely that one or more of the impaneled jurors was aware of the increasing use of polygraph examinations in the business world. R.O. Knepper's reference to the fact that he had taken a polygraph examination, combined with the comments of the Atlas president, may have erroneously caused one or more jurors in assessing the testimony which was in dispute, to believe in the certitude of the Kneppers' comments and at the same time regard with suspicion the statements of one or more of the principles of the defendants. For that reason alone, a new trial is required.
Additionally, we note that plaintiffs' counsel stressed the defendants' Canadian affiliations in a manner designed to incite the prejudice of the American jury. Plaintiffs' counsel specifically admonished the jury to send a message to Canada and shortly thereafter again instructed the jury to send a message to Montreal. See Erie *622 Ins. Co. v. Bushy, 394 So.2d 228 (Fla. 5th DCA 1981) (send a message arguments, when properly preserved for review were so inflammatory and prejudicial as to warrant a new trial). Moreover, on at least one occasion, plaintiffs' counsel made reference to the fact that defendants were protected by Canadian law from responding to plaintiffs' requests for production.
The trial court, being in the best position to judge the cumulative effect of the inflammatory comments, ordered a new trial on all issues if the remittitur was not accepted. We disagree only with the trial court's analysis that remittitur was a suitable alternative solution to the errors perceived.
In granting defendants' claim for a new trial, we now examine three other contentions of error, all of which we reject. First, there is the defendants' claim that the trial court erred in not recognizing that the communication upon which the litigation was based should have been considered privileged as a matter of law. We disagree. Where the circumstances and content of allegedly defamatory statements are clearly disputed by the parties, the jury should determine, under proper instructions from the court, whether or not the communication was privileged. Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906). Where evidence is disputed as to the existence or nonexistence of a privilege, there is a mixed question of law and fact and the fact issue is to be determined by the jury. Hartley & Parker, Inc. v. Copeland, 51 So.2d 789 (Fla. 1951); see also Glickman v. Potamkin, 454 So.2d 612 (Fla. 3d DCA 1984) (in a defamation action, the affirmative defenses of truth, good motive, and qualified privilege present factual questions for resolution by the jury), review denied, 461 So.2d 115 (Fla. 1985).
Here, many of the facts and circumstances relevant to the qualified privilege defense were not conceded below. Because the circumstances surrounding the remarks were so thoroughly disputed, the trial court correctly decided that a qualified privilege did not exist as a matter of law.
A statement is qualifiedly privileged if made by one who has a duty or interest in the subject matter to one who has a corresponding duty or interest. Teare v. Local Union No. 295 of the United Ass'n of Journeymen & Apprentices of Plumbers & Pipe Fitters Industry of U.S. & Canada, 98 So.2d 79 (Fla. 1957); Water & Sewer Utility Const., Inc. v. Mandarin Utilities, Inc., 440 So.2d 428 (Fla. 1st DCA 1983); Lundquist v. Alewine, 397 So.2d 1148 (Fla. 5th DCA 1981). Moreover, where a qualified privilege exists, plaintiffs must prove express malice or malice in fact in order to recover. Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907). Express malice, or malice in fact, constitutes an abuse of a qualified privilege leaving the defendant liable. Here, the jury was correctly instructed that:
[M]alice is an essential element of slander and may be presumed by the actionable per se nature of the alleged publication.
Where however, a qualified privilege exists, a plaintiff must prove express malice or malice in fact in order to recover.
Thus, the jury was left to decide first, whether the communication was privileged and second, whether the appropriate evidence had been submitted depending upon the standard of proof required under the circumstances. Express malice under the common law of Florida, necessary to overcome the common-law qualified privilege, is present where the primary motive for the statement is shown to have been an intention to injure the plaintiff. Nodar v. Galbreath, 462 So.2d 803, 806-7 (Fla. 1984). The plaintiff need only show this fact by a preponderance of the evidence, the ordinary standard of proof in civil cases. Id. The instruction given sub judice reflects that standard.
Next, Genstar asserts that the trial court should have found as a matter of law that no joint venture existed between Genstar, Nitrochem, and Nitrochem Energy. The existence of a joint venture is commonly a fact question to be determined by the trier of fact. Navarro v. Espino, 316 So.2d 646 *623 (Fla. 3d DCA 1975); Florida Rock & Sand Co. v. Cox, 344 So.2d 1296 (Fla. 3d DCA 1977). Here, the trial court determined that sufficient evidence was submitted for a jury's determination of this issue. We agree and acknowledge that the burden is on the party attempting to prove the joint venture to establish sufficient evidence of the elements necessary to that relationship. Kislak v. Kreedian, 95 So.2d 510 (Fla. 1957).
Finally, Genstar asserts that as a matter of law, punitive damages may not be asserted solely on the basis of the defamatory comments of a co-venturer. A corporate employer will be liable for punitive damages resulting from torts committed by its employees within the scope of their employment if the tort has been committed by a managerial employee. McArthur Dairy, Inc. v. Original Kielbs, Inc., 481 So.2d 535 (Fla. 3d DCA 1986); Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530 (Fla. 1985). It is undisputed that if defamatory statements were made by Nitrochem and Nitrochem Energy managers, the Kneppers could seek punitive damages from those companies for the wrongful acts of their managerial employees. The Kneppers argue that Genstar, as a co-venturer, could also be held liable for punitive damages for the wrongful acts of its co-venturers' managerial employees. We agree.
A joint adventurer is not liable for an injury sustained by a third person at the hand of a coadventurer as the result of a wilful or unlawful act ... unless it can be established that the act was within the actual or apparent scope of the agency of the coadventurer who committed it, that it was committed with the express or implied consent of the coadventurer sought to be held liable, or that the latter failed to protect the third person from such a hazard.
8 Fla.Jur.2d Business Relationships § 692 (1978). See also 46 Am.Jur.2d Joint Ventures § 58 (1969).
Under the facts of this case, we must reject Genstar's contention that as a matter of law the Kneppers could not be entitled to punitive damages from Genstar. This issue was correctly submitted to the jury. We note that on retrial the jury should be properly instructed on the appropriate circumstances for an award of punitive damages to a co-venturer and the proper standard by which to award punitive damages. See Fla.Std.Jury Instr. (Civ.) 6.12. We are mindful that punitive damages must be proportionate to the magnitude of the wrong committed because a defendant does have a right to be free from unreasonable punishment inflicted by an excessive punitive damage award. St. Regis Paper Co. v. Watson, 428 So.2d 243, 248 (Fla. 1983).
We conclude that all defendants' motions for new trial having been adequately and specifically pled, when considered in light of the prejudice raised by introduction of evidence referring to polygraph results and further supported by the repeated comments of plaintiff's counsel as to defendants' Canadian affiliation, require a new trial both as to liability and damages.
Accordingly, we reverse and remand for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Both parties now concede that the "multiple awards" of compensatory damages were improper and that if compensatory damages were appropriate, each plaintiff should have received a single compensatory award making defendants jointly and severally liable. Keyes Co. v. Sens, 382 So.2d 1273, 1275 (Fla. 3d DCA 1980) (if defendants are jointly liable, damages should run against all, and, under law, jury was not permitted to apportion compensatory damages among defendants).