925 So.2d 1078 (2006)
William S. DAMES, Sr. and Joy Carlista Dames, Appellants,
v.
926 COMPANY, INC., Wachovia Bank, N.A., Delray Beach Community Redevelopment Agency and IR and AR, Inc., a Florida corporation, Appellees.
No. 4D05-372.
District Court of Appeal of Florida, Fourth District.
March 15, 2006.
Rehearing Denied May 9, 2006.
*1079 Temple Fett Kearns, Sidney C. Calloway and Edward J. O'Sheehan of Shutts & Bowen LLP, Fort Lauderdale, for appellants.
Michael D. Brown of Brown & Associates, P.A., Riviera Beach, for appellee 926 Company, Inc.
STEVENSON, C.J.
This appeal arises from the tenants' claim for apportionment of proceeds paid the property owner following the exercise of eminent domain powers and the taking of the property. The trial court denied the tenants' claim for apportionment finding they had no compensable interest in the property. We reverse.

The Proceedings Below
In December 2002, the Delray Beach Community Redevelopment Agency ("CRA") filed an eminent domain petition directed to property located at 910 W. Atlantic Avenue and 926 W. Atlantic Avenue. The owner of the two buildings was 926 Company, Inc., and it and the tenants of both buildings, IR and AR, Inc., and William S. and Joy Carlista Dames (hereinafter "the Dames"), were named respondents. On July 8, 2003, the trial court rendered an Agreed Order of Taking, providing the CRA was entitled to the "vesting of title and possession" of the two buildings upon its deposit of the good faith estimate of the property's value ($567,163) into the court's registry, but allowing the tenants to remain on the premises through September 1, 2003. On July 17, 2003, the CRA filed notice of its deposit of the $567,163 into the court's registry. Subsequently, a stipulated final judgment was entered, providing the property owner would be paid $615,000 for the taking of the property.
The Dames, who operated Delray Coin Laundry out of the 910 W. Atlantic Avenue building, claimed they were entitled to a portion of the compensation paid the property owner, insisting they held a leasehold interest in the premises as a consequence of their October 1998 purchase of Delray Coin Laundry, Inc., and its assets. Lloyd and Marian Millanise, the couple from whom the Dames purchased Delray Coin Laundry, Inc., were permitted to intervene in the apportionment proceedings. In purchasing the laundry, the Dames signed a $75,000 promissory note secured by a chattel *1080 mortgage and, in December 2003, the Millanises sought to foreclose upon the mortgage.
The property owner took the position that the Dames were entitled to no portion of the $615,000, arguing the Dames, individually, held no leasehold interest in the premises as the lease was actually assigned to Delray Coin Laundry, Inc. The property owner further argued that, even if it could be said the Dames, individually, held a leasehold interest, they still were not entitled to compensation because they abandoned the premises, thereby breaching the lease. The Dames insisted they did hold the lease and were operating the laundry at all relevant times. An evidentiary hearing was held on the parties' respective claims, following which the trial court determined the Dames were not entitled to any portion of the compensation paid the property owner. The court found the Dames never individually held the lease and, even if they had, were nonetheless not entitled to compensation because (1) they abandoned the business and the premises prior to the time required by the order of taking and (2) the foreclosure action had resulted in the Millanises retaking possession of the lease. Additionally, the trial court struck the testimony of the Dames' expert real estate appraiser, finding, among other things, that he misapplied the "scope of the project" rule.

The Holder of the Leasehold Interest
The first aspect of the trial court's ruling we must address is the finding that the Dames, individually, never held a leasehold interest in the property. The evidence on this issue came from the documents executed in connection with the purchase of the laundry. The "Asset Purchase Agreement" provides that William and Joy Dames were purchasing not only all of Delray Coin Laundry, Inc.'s assets, but also the corporate entity itself. The documentary evidence is equally clear the lease of the premises from which Delray Coin Laundry was operated was assigned to William and Joy Dames, individually. The "Assignment and Acceptance of Lease" unequivocally states the Seller, defined as Delray Coin Laundry, Inc., is assigning the lease to the buyers, defined as William and Joy Dames. When the words of a contract are clear and unambiguous, the contract must be enforced as written. See, e.g., Avatar Dev. Corp. v. De Pani Constr., Inc., 834 So.2d 873, 876 n. 2 (Fla. 4th DCA 2002). Thus, as a matter of fact and law, we must conclude that the Dames held a leasehold interest in the premises.

The Abandonment & the Foreclosure of the Chattel Mortgage
Absent express language to the contrary in the lease, a lessee is entitled to compensation if his interest in the property is taken through the exercise of eminent domain. See USA Independence Mobilehome Sales, Inc. v. City of Lake City, 908 So.2d 1151, 1155-56 (Fla. 1st DCA 2005). In this case, however, the trial judge determined that even assuming the Dames had held a leasehold interest in the property, they were not entitled to compensation because they abandoned the premises prior to the time required by the order of taking and because the foreclosure of the chattel mortgage had resulted in the Millanises retaking possession and/or ownership of the lease.
Under Florida law, the time for assessing the value of property that was the subject of a taking is the earlier of the date of trial or the date that title passes. See § 73.071(2), Fla. Stat. (2005); Dep't of Transp. v. Finkelstein, 629 So.2d 932, 933 (Fla. 4th DCA 1993), aff'd, 656 So.2d 921 (Fla.1995). Where a hearing is requested on the petition for eminent domain, the *1081 trial court may, prior to the entry of the final judgment, enter an order of taking requiring the respondents to surrender possession provided the petitioner deposits the estimated value of the property into the court's registry. See § 74.051, Fla. Stat. Title to the property vests in the petitioner upon such deposit. See § 74.061, Fla. Stat. Here, the hearing was held in December 2004 and the property's estimated value was deposited into the court's registry on July 17, 2003. Thus, the date for valuation of the property was July 17, 2003. Since July 17, 2003, was the relevant date for purposes of determining the property's value, it follows that the relevant time for determining compensable interests in the property can occur no later. It is true, as the trial court found, that the coin laundry business was beginning to fail even before the condemnation proceedings, that the Dames had made plans to purchase a new laundry in West Palm Beach and had stopped making payments under the mortgage in June 2003, and that a foreclosure action was filed in December 2003. Yet, none of those facts matter in determining whether the Dames had a compensable interest in the property for the purposes of apportionment of the eminent domain proceeds since it was undisputed that as of July 17, 2003, the Dames' lease of the premises in the 910 W. Atlantic Avenue building was in full force and effect. Consequently, neither the claimed abandonment of the business or premises nor the foreclosure action can provide justification for failing to compensate the Dames for their leasehold interest.[1]

The Striking of the Expert Testimony
Having concluded the Dames did have a compensable interest in the property, we now turn to the propriety of the trial court's ruling striking the testimony of Grant Austin, the real estate appraiser called by the Dames to value their interest and the only witness to testify on the subject of valuation. In support of the decision to strike Austin's testimony, the trial court cited Austin's misunderstanding and misapplication of the "scope of the project" rule, his failure to provide testimony regarding the "breakout of the rental rates," and his ignorance of the facts that the Dames did not have a personal interest in the lease, that the foreclosure had dispossessed the Dames of their laundry equipment and the lease, and that the CRA had a relocation policy that, if applied for, would have provided the Dames financial assistance in relocating their business. We find none of the cited grounds support the striking of Austin's testimony and write to address the "scope of the project" rule.
In conducting his valuation analysis, Austin excluded comparable properties located within the redevelopment area, citing the "scope of the project" rule. The trial judge determined Austin's failure to consider comparable properties located within the redevelopment area rendered his valuation unsound as the "scope of the project" rule required consideration of such property in arriving at a valuation for the subject property. The "scope of the project" rule provides that any increase or decrease in the value of any property to be acquired which occurs after the scope of *1082 the project and its location are known[2] and which is solely attributable to knowledge of the project's scope and location shall not be considered in arriving at the value of the acquired property. See § 73.071(5), Fla. Stat. The rule does not, however, preclude the consideration of an increase in value that results from anticipation of the project and occurs prior to the announcement of the project's precise location. See Dep't of Transp. v. Nalven, 455 So.2d 301 (Fla.1984); 325 W. Adams St., Ltd. v. City of Jacksonville, 863 So.2d 380 (Fla. 1st DCA 2003), review denied, 876 So.2d 562 (Fla.2004). To the extent the values of property within the redevelopment area either increased or decreased only after the scope of the project became known and solely because of the project, such increases or decreases should not have been considered as a factor in arriving at the fair market value of the subject property. On the other hand, it would be appropriate to consider increases in the values of property within the redevelopment area if the increases resulted from anticipation of the project and took place prior to the time the precise location of the property was made known, or was wholly unrelated to the project that necessitated the taking. Thus, neither Austin nor the trial judge was wholly correct in their statement of the rule. Despite having failed to accurately state the boundaries of the rule during cross-examination, Austin's exclusion of comparable properties within the redevelopment area does not compel a conclusion that he violated the rule or that his valuation analysis is necessarily flawed. Consequently, his testimony should not have been stricken.
Having found the Dames did have a compensable leasehold interest in the premises and nothing that took place subsequent to the July 17, 2003 taking served to divest them of such interest and their right to compensation, we reverse the order appealed and remand the case to the trial court for further proceedings. On remand, the trial court should re-evaluate Austin's testimony in light of this court's opinion and, if necessary, take additional evidence concerning valuation.
Reversed and Remanded.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] To the extent the abandonment of the premises and the foreclosure action represented a breach of the lease, they likewise could not provide grounds for denying the Dames the right to compensation as such breaches took place only after July 17, 2003. Further, while there was evidence the Dames were in breach of the lease as of July 17, 2003, as a consequence of their failure to pay property taxes treated as rent under the terms of the lease, the lessor acknowledged he never took steps to legally terminate the lease.
[2] The scope of the project "shall be presumed to be known in the market on or after the condemnor executes a resolution which depicts the location of the project." § 73.071(5), Fla. Stat.