682 So.2d 168 (1996)
TRUMP ENTERPRISES, INC., Appellant,
v.
PUBLIX SUPERMARKETS, INC., Appellee.
No. 94-1296.
District Court of Appeal of Florida, Fourth District.
September 25, 1996.
Rehearing, Clarification, and Certification of Question Denied November 14, 1996.
Geoffrey L. Jones of Jeck Harris Jones & Kaufman, Jupiter, for appellant.
Alan E. DeSerio, S. Cary Gaylord, Andrew P. Brigham of Brigham, Moore, Gaylord, Schuster & Merlin, Tampa, for appellee.
SHAHOOD, Judge.
This is an appeal by Trump Enterprises, Inc., from a final judgment denying its motion for apportionment of a condemnation award paid by the State of Florida, Department of Transportation ("DOT") to Publix Supermarket, Inc. Because Trump was not compensated for the value of its leasehold either by jury verdict or settlement after the condemnation award by the DOT, but continues to pay the same rental for less land after the condemnation, we reverse and remand.
Appellee, Publix, owned a shopping center in which appellant, Trump, as assignee leased an outparcel of land which it operated as a *169 restaurant. The lease agreement between Publix and Trump contained no provision regarding an apportionment between the landlord and tenant in the event of a condemnation award.
In 1989, DOT commenced an eminent domain action to take a portion of the land from the shopping center for the purpose of road widening. Trump pled entitlement to a portion of any condemnation proceeds paid to Publix since a portion of the property taken was located in Trump's leasehold. In 1990, the trial court entered a stipulated final judgment agreed to by both Publix and Trump in the amount of $305,000, as full payment by the DOT to Publix for the condemned property. The court reserved jurisdiction to apportion the payment. Thereafter, both Publix and Trump motioned the court for an apportionment of the proceeds. This appeal follows a ruling adverse to the tenant, Trump.
Of the payment of $305,000, $250,000 was paid for the total land taken. At trial, Trump's expert testified that a total of 15,357 square feet was taken, of which 5,333 square feet were within Trump's leasehold. He then opined that this computed to 34.73% of the total land taken and then calculated that 34.73% of the $250,000 equaled $86,825, which represents the condemnation proceeds paid to Publix for that portion of the leasehold land taken.
He then testified that Publix as lessor would be entitled to a rental income stream for 24.25 years, if the lease options were all renewed, and to a reversion 24.25 years after the taking. A value of $8,600 in today's dollars was assigned as the difference between the value of the reversion before the taking and the value of the reversion after the taking. According to the expert, the net amount of $78,225 represents the condemnation proceeds to which Trump would be entitled as just compensation for the value of its leasehold taken. Publix never rebutted this testimony, nor did it present any independent evidence of either the value of the condemned portion of the leasehold or the value of Publix's reversionary interest.
A basic principle of real property law is that a valid lease for a term of years is a conveyance of an interest in land. Flowers v. Atlantic Coast Line Ry., 140 Fla. 805, 192 So. 321 (1939). Further, as stated in State Road Department v. White, 148 So.2d 32, 34 (Fla. 2d DCA 1962):
"During the life of a lease, the lessee holds an outstanding leasehold estate in the premises, which for all practical purposes is equivalent to absolute ownership. The estate of the lessor during such time is limited to his reversionary interest, which ripens into perfect title at the expiration of the lease." Rogers v. Martin, 1924, 87 Fla. 204, 99 So. 551, 4th Headnote. In the case of DeVore v. Lee, Comptroller, 1947, 158 Fla. 608, 30 So.2d 924, it is stated: "A lease has been defined as `a conveyance by the owner of an estate to another of a portion of his interest therein for a term less than his own' and `it passes a present interest in the land for the period specified.'" In the law of eminent domain, a lessee for years under a written lease is an owner of property in the constitutional sense, and is entitled to share in the compensation when all or a part of the leased property is taken during the period of the lease.
Further, as stated in National Advertising Co. v. State, Department of Transportation, 611 So.2d 566 (Fla. 1st DCA 1992), "[i]t has long been established that a `lessee' is an owner protected by the constitutional guarantee in Article X, section 6(a) of the Florida Constitution against the taking of private property without just compensation." Id. at 569 (citing Carter v. State Rd. Dep't, 189 So.2d 793 (Fla.1966)).
Accordingly, in an eminent domain or condemnation proceeding where the property taken is encumbered by a leasehold interest, the first issue to be determined from all pertinent proffered facts is the value of the fee interest and the value of the leasehold interest. See National Advertising Co.; Carter. After such a determination, either by jury verdict or by a stipulated final judgment, as in this case, the parties next proceed to an apportionment hearing at which time the court determines their respective rights in the amount awarded. Dama v. *170 Record Bar Inc., 512 So.2d 206 (Fla. 1st DCA 1987). "In apportioning condemnation proceeds the court should divide the sum equitably between the parties to reflect the respective values of the encumbered fee and the leasehold interest." Id. at 208; see generally Parks Bldg., Inc. v. Palm Beach County, 144 So.2d 830 (Fla. 2d DCA 1962).
In entering its Final Judgment Denying Apportionment, the trial court in this case specifically found as follows:
The essential elements of Trump's claim for apportionment are that a portion of the real property that was leased for this restaurant was condemned by the D.O.T. and that because Trump is paying the same rental on the lease for less land after the condemnation, that Trump has in fact sustained a loss. Expert witnesses called on Trump's behalf testified that taking into consideration the following elements: 1. the amount of the total award to Publix; 2. the amount of square footage taken from the restaurant as a percentage of the square footage taken from the entire shopping center; 3. the amount of any funds Publix would have to expend to repair any damage caused by the taking; and 4. the value of any reverter interest Publix would have at the termination of the lease; that such elements would all figure in to a fair apportionment being made to Trump in the amount of $78,225.00.
Publix defends on several grounds; the primary of which is that Trump has in fact sustained no damage and therefore is entitled to no apportionment. The basis for that defense is that the portion of land taken from the property leased to this restaurant only included a grassy area which ran along side the road. None of the building occupied by the restaurant was affected by the taking and no parking spaces were lost. The restaurant continues to be profitable.

(Emphasis added).
The trial court failed, however, to consider that the lease and the sub-lease agreements were for the lease of unimproved land only, not for a restaurant. The restaurant building was constructed by the original sub-lessee. Neither the "continued profitability" of the restaurant business, nor the fact that Trump's business suffered no damage should have factored into the equation. Rather, the trial court should have limited its consideration at the apportionment hearing to the value of the leasehold taken, see Parks, and concluded that, as a result of the condemnation, Trump's leasehold was diminished by 5,333 square feet. Trump is entitled to compensation for the resultant decrease in the value of his leasehold interest. We approve the method employed by Trump's expert in valuing the portion of the condemnation proceeds to which Trump is entitled.
We turn next to the issue of the absence of a condemnation clause in the lease agreement. Publix urges that since the agreement does not contemplate condemnation proceeds, Trump is not entitled to be compensated for the leasehold land taken. We reject that argument, and hold, to the contrary, that a lessee of land under a written lease agreement for a term of years is an owner of property in the constitutional sense and is thereby entitled to full compensation for such a taking, notwithstanding the silence in such a lease. See generally Mullis v. Division of Admin., 390 So.2d 473 (Fla. 5th DCA 1980).
It has been held that the law does not look with favor on clauses causing forfeiture of the lessee's interest on condemnation, hence, a lease covenant will be construed not to have that effect if its language in the circumstances possibly permit.
Id. at 474 (citing 2 Nichols on Eminent Domain, § 5.23(2) (3d ed. 1979)). Accordingly, Trump should not be deprived of just compensation simply because the lease agreement lacks a condemnation clause.
The final judgment appealed is therefore reversed, and the cause remanded to the trial court to enter final judgment in accordance with this opinion.
Reversed and remanded.
GLICKSTEIN, J., concurs.
JACQUELINE R. GRIFFIN, Associate Judge, dissents without opinion.