STRINGER, Judge.
The Department of Transportation (DOT) initiated a condemnation action for the taking of a portion of property in a Lakeland shopping center. A substantial amount of the condemned property was used for parking. Appellees, Nathan Benderson, Ronald Benderson, and David H. Baudauf (collectively Benderson), are trustees of the trust that owns the shopping center; and Appellant, Winn-Dixie Stores, Inc. (Winn-Dixie), leases space in the shopping center. The DOT and Bend-erson entered into a settlement agreement for $2,640,000, which was escrowed. Winn-Dixie was not a party to the settlement agreement, and the trial court entered an order establishing that Winn-Dixie was, at its option, entitled to pursue a separate claim for the taking of its leasehold interest in the condemned property.
Benderson moved the trial eourt to release the escrowed funds contending that Winn-Dixie was not entitled to apportionment. Winn-Dixie opposed the motion based upon its rights under the lease. The trial court entered a final order releasing the escrowed funds to Benderson and holding that Winn-Dixie was not entitled to apportionment of the proceeds for its leasehold interest. We reverse because *729 the trial court erred in interpreting the lease as precluding Winn-Dixie from sharing in the condemnation proceeds.
Benderson agrees that it is well-settled law in Florida that “a valid lease for a term of years is a conveyance of an interest in land” which is protected by the constitutional guarantee against an eminent domain taking without just compensation. Trump Enters., Inc. v. Publix Supermarkets, Inc., 682 So.2d 168, 169 (Fla. 4th DCA 1996). Rather, Benderson contends that Winn-Dixie contracted away its rights in the lease. The law in Florida is equally clear that the contract language of a lease cannot extinguish the lessee’s right to just compensation for the taking of its leasehold interest unless that language expressly states that the lessee will not share in the eminent domain award in the event of a taking. Trump, 682 So.2d at 170; Elmore v. Broward County, 507 So.2d 1220, 1222 (Fla. 4th DCA 1987). Furthermore, case law from this district indicates that a lessee is entitled to recover damages in eminent domain proceedings when its access to parking is diminished by a taking. See K-Mart Corp. v. Dep’t of Transp., 686 So.2d 131 (Fla. 2d DCA 1994).
In K-Mart, this court held that K-Mart was entitled to compensation based on its leasehold interest. The taking in that case resulted in loss of direct access to a main artery (U.S. Highway 19) as well as driveways and parking areas. Id. at 132. As Winn-Dixie has in the present case, K-Mart asserted severance damages and business damages.[1] The applicable language in the K-Mart lease provided that “the tenant’s right to receive compensation or damages or to share in any award shall not be affected in any manner hereby if said compensation damages or award is made by reason of expropriation of the land.” Id. at 132. Noting that “the diminution of a leasehold interest by governmental taking is compensable,” this court reasoned that because the taking involved “land,” K-Mart was entitled to compensation. Id. As in K-Mart, for reasons discussed below, the Winn-Dixie lease contemplates an interest in the surrounding land. The condemnation clause in Winn-Dixie’s lease provides:
If any part of the demised premises or more than twenty per cent (20%) of the buildings, exclusive of Tenant’s building, within the shopping center, be taken for any public or quasi-public use, under any statute or by right of eminent domain, or private purchase in lieu thereof, the Tenant shall be entitled to termination of this lease at its option, and any unearned rent or other charges paid in advance shall be refunded to the Tenant. In the event the Tenant does not elect to terminate this lease ..., the Landlord shall immediately commence and diligently prosecute to completion the repair and restoration of the improvements, ... to a condition comparable to their condition at the time of the taking ..., but Tenant shall be entitled to such division of proceeds and abatement of rent and other adjustments as shall be just and equitable under all circumstances.
In the event that any portion of the common areas (including parking area and access thereto) ... be taken ..., so as to materially or substantially interfere with the conduct of Tenant’s business in the demised premises, or so as to reduce the required parking area by an amount in excess of ten per cent ... or reduce the number of cars which may be *730 conveniently parked to less than 558, the Tenant may, at its opinion, terminate this lease....
Benderson advances two primary arguments as to why Winn-Dixie cannot recover for the taking in this case.
Benderson first argues that Winn-Dixie’s leasehold interest did not include the parking area. The lease describes the leased or “demised premises” as “that certain store building ... and the land on which the same shall stand ... which store building and related improvements are to be constructed ... according to plans and specifications to be approved by the parties as herein provided.” (Emphasis added.) Based on this description, Benderson argues that Winn-Dixie’s leasehold interest did not include the parking area. We reject this argument. The lease, taken as a whole, contemplates a leasehold interest in the common areas of the shopping center. First, the lease refers to the leased premises as the “store building and related improvements.” “Related improvements” include the specifications for the parking area which require a minimum ratio of 4.85 parking spaces per 1000 square feet of building area. Second, the terms of the lease indicate that its continuation or termination was contingent upon the availability of adequate parking. Third, Winn-Dixie paid separate consideration (“additional rent”) for the monthly maintenance and repair of the parking area. The lease required Winn-Dixie to pay ten cents per square foot “as additional rent” to assist the landlord in maintaining and repairing the common areas, including “general repair and maintenance of all paved surfaces [and] repainting of parking area striping.” Therefore, when read as a whole, the express terms of the lease indicate that Winn-Dixie bargained for an interest in the parking area of the shopping center.
In its final argument, Benderson maintains that the absence of apportionment language in the second paragraph of the condemnation clause of the lease operates to bar apportionment for a taking of the common areas. We likewise reject this argument. While parties to a lease are free to contract away the tenant’s right to be compensated for a taking, the lease must express this intent in clear terms. Trump, 682 So.2d at 170 (holding that the law looks with disfavor on clauses forfeiting a lessee’s interest in condemnation proceeds, and therefore lease covenants will be construed against forfeiture if their language in the circumstances possibly permit).
Reversed and remanded with instructions for the trial court to proceed with apportionment of the deposited proceeds.
SILBERMAN, J., Concurs.
ALTENBERND, J., Concurs specially.

. Among other claims pleaded in its answer to the DOT's petition, Winn-Dixie asserted severance damages, damages for the loss of value to the remaining property, and special damages for diminished access to the property.