629 So.2d 1036 (1993)
Susanne Rae SCHMIDT, as Successor Personal Representative of the Estate of Karl F. Schmidt; Gene J. Schmidt, individually and as Personal Representative of the Estate of Etha Mae Schmidt; and Susanne Rae Schmidt, as Personal Representative of the Estate of Karl F. Schmidt, Jr., Appellants,
v.
Lloyd B. FORTNER, individually; Bernard S. Schmidt, individually, as former Personal Representative of the Estate of Karl F. Schmidt, as former Personal Representative of the Estate of Etha Mae Schmidt, and as Trustee under the Will of Etha Mae Schmidt, Appellees.
No. 92-0912.
District Court of Appeal of Florida, Fourth District.
December 29, 1993.
*1037 Theresa A. DiPaola of Roberts & DiPaola, P.A. and Philip M. Burlington of Edna L. Caruso, P.A., West Palm Beach, for appellants.
Cathy L. Kasten of Adams, Coogler, Watson & Merkel, P.A., West Palm Beach, for appellees.
FARMER, Judge.
In this case, we review a trial court's decision to deny a motion for offer-of-judgment attorney's fees under sections 45.061 and 768.79, Florida Statutes (1991). We reverse.
Bernard Schmidt was appointed the personal representative [PR] of the estate of his uncle, Karl Sr., in 1978. The decedent's widow (his aunt), Etha Mae, was the other PR. She died in 1981, and Bernard was then appointed the sole PR of her estate.[1] Both wills had been drafted by Lloyd Fortner, who also represented both estates and their PRs. Among other things, Fortner drafted a *1038 "delegation of authority" authorizing the PR to act on behalf of the heirs, Karl, Jr. and Gene, of his uncle and aunt in administering the estates.
In the uncle's estate, no accounting was ever filed, but in October 1979 the PR did file an inventory showing the estate's assets had an approximate value of $750,000. On the other hand, the IRS Estate Tax Return, form 706, prepared by Fortner, valued the gross estate at $959,930.78. No action was ever taken on the probate of Etha Mae's estate. No inventory or accounting was ever filed, despite court orders requiring the PR to file them.
In October 1990, the probate court removed Bernard as PR of both estates, without discharging him of liability. In its earlier order to show cause why the PR should not be removed, the probate judge had observed that $750,000 in estate funds were unaccounted for.[2] Over one year later, the beneficiaries, who had become the successor PRs [plaintiffs], sued Bernard and Fortner, alleging a number of improprieties in the handling of the Schmidt estates and legal malpractice against Fortner. Before trial, Fortner admitted negligence but continued to deny any causal relationship between his negligence and any losses sustained by the estates or their beneficiaries.
Four months after suit was filed, plaintiffs served a demand for judgment in the amount of $500,000 under rule 1.442, Florida Rules of Civil Procedure, and sections 45.061 and 768.79. Fortner did not respond to the offer in any way. More importantly, although he later claimed that the 30-day period provided under section 768.79 was too short to allow for consideration of the reasonableness of the demand, he did not seek an enlargement of time under rule 1.090(b)[3] to respond to the demand. He simply did nothing, and the 30-day period passed without a response. Upon trial on the merits, the jury returned a verdict of $644,000 in favor of plaintiffs.
After the entry of judgment, plaintiffs moved for an award of costs and attorney's fees under sections 45.061 and 768.79. The trial court heard testimony and received evidence on the motion from the parties. In a final order, the court denied any award of fees, explaining:
"While it is true that liability or fault may have seemed relatively clear at the outset of the case, the amount of any damages which could be attributed to Mr. Fortner's negligence were [sic] extremely unclear. Although Plaintiffs' counsel claimed that they made a calculation of $750,000 as damages at the outset this figure was obviously unsupportable and not documentable by anything reasonably reliable.
At the time of the offer of judgment this estimate failed to account for: (1) the amount of money the Plaintiffs had received in cash and in kind distributions; (2) any expenses incurred by Etha May Schmidt during her lifetime; and (3) the amount appropriately spent by Bernard Schmidt and the amount stolen by him.
It is clear from the evidence submitted that Plaintiffs had no reasonably reliable way to measure the loss at the time they submitted their offer of judgment. The amount of the offer was selected by Plaintiff solely because it was the amount of Defendants' insurance policy. It is true that the amount of the jury verdict is 1.288% [sic] greater than the offer.
The calculation of damages or valuation of this case was further complicated by the fact that the Plaintiffs were co-personal representatives with the Defendant [Bernard] *1039 Schmidt and had legal duties equal to his. Under these circumstances the Court does not believe an award of attorney's fees is justified."
The trial court's analysis is properly understood as a finding that Fortner's de facto rejection was reasonable under the circumstances. Plaintiffs' demand for judgment was made under both sections 45.061 and 768.79.[4] The finding that plaintiffs were not entitled to fees as a sanction under section 45.061(2) did not, however, dispose of the issue of their entitlement to an award of fees under section 768.79, as to which the issues were different.
Subsection (1) of section 768.79 provides in pertinent part as follows:
"If a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand."
At the same time, subsection (6)(b) provides:
"(6) Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary or involuntary dismissal, the court shall determine the following: * * * (b) If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was made."
As can be seen from the court's explanation, its basis for denying attorney's fees was that the plaintiffs lacked "reasonably reliable" evidence to support the amount of damages sought in their demand for judgement. We do not understand the good faith requirement of section 768.79(7)(a), however, to demand that an offeror necessarily possess, at the time he makes an offer or demand under the statute, the kind or quantum of evidence needed to support a judgment. The obligation of good faith merely insists that the offeror have some reasonable foundation on which to base an offer.
A reasonable basis here existed in the general range of assets that the probate judge said were missing from the estate. To require the exacting proof that a prima facie case entails would be both contrary to the text and quite antithetical to the purpose and intent of the statute. It would clearly discourage making good faith offers of settlement early in a case, i.e. before the parties have expended substantial sums in attorney's fees and costs for discovery and preparation for trial.
Moreover, there is no suggestion in this record that plaintiffs made the $500,000 demand with a specific intent not to settle the case at the amount demanded. See e.g., Bridges v. Newton, 556 So.2d 1170 (Fla. 3d DCA 1990) (where offeror demands judgment in an amount offeror knows is inadequate, and when accepted by offeree refuses to conclude final settlement, demand was *1040 deemed made in bad faith).[5] Nor is there any such finding by the trial judge. To the contrary, the record shows without contradiction that plaintiffs believed the amount to be within the range of the assumed value of the missing assets. The single fact that Fortner had liability insurance coverage equal to the amount of the demand does not establish that the demand was not made in good faith. After all, it would make little sense to demand a judgment that no one could collect.
Turning to the substance of section 768.79 itself, we conclude that the legislature has created a mandatory right to attorney's fees, if the statutory prerequisites have been met. The statute begins by creating an "entitlement" to fees. That entitlement may then lead to an "award" of fees. That award may then be lost by a finding that the entitlement was created "not in good faith," or the amount of the award may be adjusted upward or downward by a consideration of statutory factors. That, in outline form, is how we read this statute. We explain in more detail in the following paragraphs.
To begin, the words "shall be entitled" [e.s.] in subsection (1) quoted above cannot possibly have any meaning other than to create a right to attorney's fees when the two preceding prerequisites have been fulfilled: i.e., (1) when a party has served a demand or offer for judgment, and (2) that party has recovered a judgment at least 25 percent more or less than the demand or offer. These are the only elements of the statutory entitlement. No other factor is relevant in determining the question of entitlement. The court is faced with a simple, arithmetic, calculation. How that entitlement gets translated into tangible attorney's fees is covered by the process of an "award."
Subsection (6)(b) of section 768.79 (in pertinent part) provides as follows:
"(6) Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary or involuntary dismissal, the court shall determine the following:

*1041 (a) If a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served, and the court shall set off such costs in attorney's fees against the award. When such costs and attorney's fees total more than the amount of the judgment, the court shall enter judgment for the defendant against the plaintiff for the amount of the costs and fees, less the amount of the award to the plaintiff.
(b) If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served."
Under this provision, the right to an award turns only on the difference between the amount of a rejected offer and the amount of a later judgment. It does not depend on whether the offer or the rejection was reasonable. If the offer is 25 percent more or less than the judgment, then the party has qualified for an award. To repeat, these two provisions together create an entitlement which qualifies a party to an award of attorney's fees where the party has served an offer that is more or less than the ultimate judgment, if the motion therefor has been timely made.
It is under subsection (7) of section 768.79 that Fortner says he finds his support for the trial judge's denial of fees in this case. He argues that under subsection (7) the court is given discretion to decline an award of fees. In this he is certainly partially correct. Subsection (7)(a) provides that:
"(a) If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees."
This provision does indeed allow the court in its discretion to disallow an award of attorney's fees, but only if it determines that a qualifying offer "was not made in good faith." That is the sole basis on which the court can disallow an entitlement to an award of fees. In that circumstance, however, a "not in good faith" offeror  though prima facie entitled to fees under section 768.79(7)  has lost that entitlement because the offeree has succeeded in persuading the trial judge that the offeror acted without good faith.[6] His entitlement to fees has thus been disallowed because his intentions have been shown to be "not in good faith." Here, however, that provision is inapplicable because there was no evidence that the demand was "not made in good faith," and no finding to that effect by the trial judge.
Hence, Fortner turns to subsection (7)(b) and the following text to attempt to justify a discretionary denial of all fees:
"(b) When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider the following additional factors:

*1042 1. The then apparent merit or lack of merit in the claim.[7]
2. The number and nature of offers made by the parties.
3. The closeness of questions of fact and law at issue.
4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged." [e.s.]
He argues that award and entitlement amount to the same thing, and thus the judge could properly use the enumerated factors of subsection (7)(b) as the basis for denying all fees to an otherwise qualifying offeror. We disagree.
In the first place, the term "award" of fees in subsection (7)(b) obviously relates back to subsection (6)(b) where  as we have just seen  that term first appears. There the legislature established the mechanism by which an entitlement is converted to an award of attorney's fees. Subsection (7)(b) proceeds on the notion that a party has successfully perfected a right or entitlement to fees and has properly qualified for an award under subsection (6). Moreover, in order to reach subsection (7)(b), the court must have already ruled out a disallowance of an award because of a finding of "not made in good faith" under subsection (7)(a). The noun "award" in (7)(b) therefore refers to the process of fixing the amount of the fee to which the qualifying plaintiff is already entitled. It has nothing to do with the entirely separate inquiry as to entitlement itself, which is an arithmetic calculation.
Secondly, the noun "reasonableness" in subsection (7)(b) is modified only by the prepositional phrase, "of an award". It is thus the award of fees that must be reasonable, i.e., the determination of the amount of the fee, and not whether the entitlement is reasonable. Under this statute, the legislature did not give judges the discretion to determine whether it is reasonable to entitle qualifying plaintiffs to fees. Rather, it determined for itself that it is reasonable to entitle every offeror who makes a good faith offer (later rejected) 25 percent more or less than the judgment finally entered to an award of fees. Under subsection (7)(b), the court's discretion is directed by the statutory text solely to determining the reasonability of the amount of fees awarded; and that discretion is informed, at least partially, by the 6 factors thereafter listed in that subsection.
In Bridges, the Third District construed this subsection as follows:
"* * * paragraph 768.79(2)(b) also applies in determining `the reasonableness of an award of attorney's fees pursuant to this section * * *.' Among the factors expressly to be considered is the `number and nature of offers made by the parties.' * * * It would be entirely unreasonable to reward [the offeror's] behavior with an award of post-demand attorney's fees."
556 So.2d at 1171-1172.[8] By the term "behavior" the court, of course, referred to the offeror's conduct in not intending to conclude a settlement at the amount offered. But the court had already decided that fees should be disallowed because the offeror had not acted "in good faith" in making an offer when he did not intend to settle the case on the terms offered. We thus view the third district's entirely separate conclusion on reasonableness to be unnecessary to the decision in Bridges. To the extent that it is not dicta, we expressly disagree with it and certify conflict.
*1043 In light of the construction of the text, it was error to deny these plaintiffs an award of attorney's fees under section 768.79, even if the trial judge's decision was arguably correct under section 45.061.[9] We note that, nevertheless, he commendably proceeded to determine the amount of fees as an alternative finding. On remand, therefore, the court shall simply enter a final order awarding attorney's fees in the amount already fixed.[10]
REVERSED AND REMANDED WITH DIRECTIONS.
GLICKSTEIN and WARNER, JJ., concur.
NOTES
[1] The sole beneficiaries of Karl Sr.'s estate were his widow and his two sons, Karl, Jr. and Gene. The sole beneficiaries of Etha Mae's estate were her two sons, Karl, Jr. and Gene.
[2] The testimony was to the effect that the probate judge had based this assertion on the Estate Tax Return.
[3] See Fla.R.Civ.P. 1.090(b) ("When an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed * * *."). In Timmons v. Combs, 608 So.2d 1 (Fla. 1992), the supreme court adopted the procedural aspects of section 768.79 as part of rule 1.442. Because the time for responding to an offer of judgment under section 768.79 is now governed by rule 1.442, there is no reason why rule 1.090(b) would not authorize the enlargement of the prescribed period of time to respond to an offer or demand for judgment.
[4] Section 45.061(2) then provided as follows:

"If, upon a motion by the offeror within 30 days after the entry of judgment, the court determines that an offer was rejected unreasonably, resulting in unnecessary delay and needless increase in the cost of litigation, it may impose an appropriate sanction upon the offeree."
We expressly abstain from making any decision as to whether there is competent evidence in the record to support the trial judge's conclusion that Fortner's rejection of the demand was not unreasonable and did not result in unnecessary delay and needless increase in the cost of litigation.
Section 45.061(2) then provided as follows:
"If, upon a motion by the offeror within 30 days after the entry of judgment, the court determines that an offer was rejected unreasonably, resulting in unnecessary delay and needless increase in the cost of litigation, it may impose an appropriate sanction upon the offeree."
We expressly abstain from making any decision as to whether there is competent evidence in the record to support the trial judge's conclusion that Fortner's rejection of the demand was not unreasonable and did not result in unnecessary delay and needless increase in the cost of litigation.
[5] As we shall see later, section 768.79(7)(a), Florida Statutes (1991), allows the court to deny fees and costs when an offer was "not made in good faith." We agree with the Bridges conclusion that there is no difference under this subsection between an offer of judgment and a demand for judgment. In fact, we read the two terms, "offer" and "demand," to be interchangeable.

The term, "bad faith," used by the Bridges court, however, may very well mean something different to reasonable minds than the statutory term "not in good faith." But whatever may be the possible differences in them, both the absence of good faith and the presence of bad faith reasonably seem to us to include not intending to settle the case at the figure offered or demanded. Making an offer without any intent to conclude a binding agreement seems to us the essence of both "not in good faith" and "bad faith".
A mere belief that the figure offered or demanded will not be accepted, on the other hand, does not necessarily suggest to us either the absence of good faith or the presence of bad faith  at least where the offeror fully intends to conclude a settlement if the offer or demand is accepted as made, and the amount of the offer or demand is not so widely inconsistent with the known facts of the case as to suggest on its face the sole purpose of creating a right to fees if it is not accepted.
As will become apparent later in this opinion, we also disagree with the Bridges implication that section 768.79(7)(b) can fairly be read to authorize a court to exercise discretion to deny all fees to a qualifying good faith offeror.
As we shall see later, section 768.79(7)(a), Florida Statutes (1991), allows the court to deny fees and costs when an offer was "not made in good faith." We agree with the Bridges conclusion that there is no difference under this subsection between an offer of judgment and a demand for judgment. In fact, we read the two terms, "offer" and "demand," to be interchangeable.
The term, "bad faith," used by the Bridges court, however, may very well mean something different to reasonable minds than the statutory term "not in good faith." But whatever may be the possible differences in them, both the absence of good faith and the presence of bad faith reasonably seem to us to include not intending to settle the case at the figure offered or demanded. Making an offer without any intent to conclude a binding agreement seems to us the essence of both "not in good faith" and "bad faith".
A mere belief that the figure offered or demanded will not be accepted, on the other hand, does not necessarily suggest to us either the absence of good faith or the presence of bad faith  at least where the offeror fully intends to conclude a settlement if the offer or demand is accepted as made, and the amount of the offer or demand is not so widely inconsistent with the known facts of the case as to suggest on its face the sole purpose of creating a right to fees if it is not accepted.
As will become apparent later in this opinion, we also disagree with the Bridges implication that section 768.79(7)(b) can fairly be read to authorize a court to exercise discretion to deny all fees to a qualifying good faith offeror.
[6] Subsection (7)(a) begins with the words: "If a party is entitled to costs and fees pursuant to the provisions of this section * * *." The meaning of this introductory adverbial clause is clearly that a disallowance can be effected only upon someone who is already otherwise entitled to fees. By placing this disallowance provision in a separate subdivision from the award provision, we deduce that the legislature intended to place the burden on the offeree to prove the absence of good faith.

Subsection (7)(a) begins with the words: "If a party is entitled to costs and fees pursuant to the provisions of this section * * *." The meaning of this introductory adverbial clause is clearly that a disallowance can be effected only upon someone who is already otherwise entitled to fees. By placing this disallowance provision in a separate subdivision from the award provision, we deduce that the legislature intended to place the burden on the offeree to prove the absence of good faith.
[7] Even if one could plausibly argue that subsection (7)(b) authorized trial judges to deny fee awards to otherwise qualifying parties, we note that the term "then apparent merit or lack of merit" [e.s.] is inconsistent with a construction that an offeror then possess admissible evidence to support a judgment in the amount offered. Such a conclusion would construe the word "apparent" out of the text.
[8] The Bridges court construed the 1987 version of section 768.79. Subsection (2)(b) of the 1987 statute appears in subsection (7)(b) of the 1991 statute. Compare § 768.79(2)(b), Fla. Stat. (1987), with § 768.79(7)(b), Fla. Stat. (1991).
[9] We find no need to address any other issue raised.
[10] We grant plaintiffs' motion for appellate fees. Williams v. Brochu, 578 So.2d 491 (Fla. 5th DCA 1991). That amount should be determined in a separate final order, and defendant can have the amount of appellate attorney's fees reviewed, if he be so advised, by a proper motion under Florida Rule of Appellate Procedure 9.400(c).