689 So.2d 292 (1997)
PEOPLES GAS SYSTEM, INC. and People Gas Co. f/u/b/o American Home Assurance Co., Appellants,
v.
ACME GAS CORPORATION; Atlantic Gas Corporation; Boye's Gas, Inc.; City Gas Company of Florida; Delta Gas Company d/b/a Universal Gas Corporation; Dolphin Gas System; Home Gas Corporation; Metrogas Inc.; Miller Gas Company; Petrolane Gas Service; Public Gas Company; Siegal Gas Corporation; BJD Energy Development Company d/b/a Sun Gas Corporation of Florida; Weeks Bottle Gas and Appliance Company; Miramar Gas Company; Liberty Gas Company; Palm Gas Service Company; and Blau Gas of Florida, Inc., Appellees.
Nos. 95-1282, 95-1942.
District Court of Appeal of Florida, Third District.
January 15, 1997.
Rehearing Denied March 19, 1997.
*294 Nicklaus & Wicks, P.A. and William R. Wicks, Coral Gables, for appellants.
Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A. and Gerard E. Pyszka, Miami, and Cindy J. Mishcon, North Miami Beach, for appellee Public Gas Company.
Kubicki Draper and Elizabeth M. Rodriguez, Miami, for appellees Acme Gas Corporation, Atlantic Gas Corporation, City Gas Company of Florida, Delta Gas Company d/b/a Universal Gas Corporation, Dolphin Gas System, Home Gas Corporation, Miller Gas Company, BJD Energy Development Company d/b/a Sun Gas Corporation of Florida, Weeks Bottle Gas and Appliance Company and Palm Gas Service Company.
Knecht & Knecht and Michael R. Kirby, Miami, for appellees Metrogas, Inc. and Siegal Gas Corporation.
Ponzoli, Wassenberg & Sperkacz, P.A. and Richard L. Wassenberg, Miami, for appellee Blau Gas of Florida, Inc.
Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A. and Steven E. Stark, Miami, for appellee Petrolane Gas Service.
Before NESBITT, JORGENSON and GREEN, JJ.
GREEN, Judge.

I
Peoples Gas System, Inc. and People Gas Co. f/u/b/o American Home Assurance Co. (collectively "Peoples Gas") appeal an adverse final summary judgment entered in *295 their third-party action for contribution and indemnity against appellees, all of whom were fellow members of a former emergency response system known as "Gas Central." Peoples Gas also appeals an award of attorney's fees and costs to two of the appellees, Metrogas, Inc. and Siegal Gas Corp., based upon Peoples Gas' rejection of their respective offers of judgment. We affirm the summary judgment as a matter of law based upon the undisputed facts set out below as well as the award of attorney's fees and costs to Metrogas, Inc. and Siegal Gas Corp.

GAS CENTRAL
Gas Central was a non-profit organization formed in the late 1960s by various independent gas companies throughout Dade and Broward counties. Its sole purpose was to provide qualified gas personnel after normal business hours to assist fire and police departments in emergency situations involving gas leaks. Essentially, Gas Central's members agreed to designate one member to field and respond to all incoming emergency calls from the fire and/or police departments in Dade and Broward counties. The responding gas company would then go to the scene and report to the police or fire officer in charge. The company would also secure the immediate vicinity from danger by turning off or disconnecting the gas supply. It was agreed, however, that the responding company would make no repairs unless its own gas line was involved. Rather, the responding company was specifically charged with the task of identifying the Gas Central member which owned the leaking gas line and immediately calling that company to the scene to make the necessary repairs.
The prerequisites for membership in Gas Central were that each member: 1) maintain its own liability insurance policy in an agreed amount; 2) execute a hold harmless agreement absolving the responding gas company from any liability incurred at the scene on behalf of the particular Gas Central member;[1] and 3) regularly provide the responding gas company with the names and phone numbers of its personnel members who were available to handle after-hours emergency matters. Whenever the designated company responded to an emergency scene with its personnel and equipment, it was entitled to bill the particular gas company whose line caused the leak for services rendered. The *296 amount paid to the responding company was not shared with the remaining Gas Central members.
Gas Central was an informal organization which had no officers and/or directors. Other than its agreed-upon procedures for handling emergency calls, it operated without bylaws, articles of incorporation, or a charter. Gas Central further had no budget, bank account, insurance policy, office space or letterhead of its own. Nor did the participating members fund the organization with the payment of any dues. In fact, the only things that Gas Central had were two hotline telephones with unlisted numbers for Dade and Broward counties. These unlisted numbers were made available only to the fire and police departments in Dade and Broward counties.
From 1973 until the date of the incident in question, Peoples Gas was the gas company designated to receive and field emergency Gas Central calls in its office from the fire and police departments. In addition to the unlisted Dade and Broward hotline telephones for Gas Central emergencies in its offices, Peoples Gas also had a telephone with a published number in the directory for the public to report gas leaks. Pursuant to Gas Central's established procedures,[2] Peoples Gas generally fielded approximately 15 to 18 Gas Central emergency calls per month. For its services, Peoples Gas routinely billed the individual Gas Central member involved when Peoples Gas dispatched its employees and/or equipment to the scene.

THE EXPLOSION
Peoples Gas' third-party action against appellees arose from a complaint filed by Thomas Googe against Peoples Gas and All State Gas Co. of Fla., Inc. d/b/a "All-Pro Gas" ("All-Pro") for injuries sustained by Googe on July 1, 1989 in a gas explosion at his home. The genesis of this incident actually began the day before, on June 30, 1989 when Googe's back yard neighbors, Diane and Daniel Riefler, detected a gas-like odor in their backyard. Although the Rieflers did not utilize gas or have gas lines on their property, they decided to call a local gas company to alert them of the odor.
Mr. Riefler then combed the yellow pages of the local telephone directory to find a gas company. He ultimately selected Peoples Gas because it "was in a bigger box than the rest." He telephoned the company to alert it of the gas odor. In response, Peoples Gas dispatched several of its employees to the Riefler residence. Upon their arrival, Peoples Gas' employees took readings from a combustible gas indicator ("C.G.I."), a device used to detect gas leaks. Peoples Gas' employees received what they perceived to be a dangerously high positive reading from the C.G.I. In fact, they classified the leak as "Grade 1" which they defined as "a leak that represents an existing or probable hazard to persons or property and that taking into account the location of the leak, requires prompt action until conditions are no longer hazardous." These employees also got even higher positive gas readings as they walked away from the back of the Rieflers' home toward the property line fence which separated the Rieflers' home and Googe's residence. Despite this fact, however, Peoples Gas' employees never extended their investigation into Googe's backyard.
*297 Rather, Peoples Gas employees dug a small ventilation ditch at the corner of the Rieflers' house where the high gas reading was obtained. Despite their classification of the leak as "Grade 1," Peoples Gas' employees did not evacuate the neighborhood or warn its residents of the dangerous reading. Nor did they notify the fire and/or police departments of their findings.
At some point, someone in the area informed Peoples Gas that All-Pro, another Gas Central member, had gas lines in the area. Peoples Gas notified All-Pro to come to the scene. Upon All-Pro's arrival to the scene, Peoples Gas' employees departed with no further involvement. All-Pro's employees did a cursory inspection of the Rieflers' property and attempted to detect the presence of gas by merely sniffing the area with their noses.[3] When All-Pro's employees did not smell the gas, they apparently concluded that the area was safe and left the scene approximately two and a half hours after their arrival. Because the Rieflers still insisted that they smelled gas, one of All-Pro's employees later returned to the scene and again attempted to detect for the presence of gas with his nose. When he again could not smell the gas, he departed the scene without further investigation. None of the other Gas Central members had any involvement with or knowledge of this incident at the time.
Later on July 1, 1989, Googe was severely burned over 90% of his body in a gas explosion that occurred in his bathroom. The explosion occurred when Googe lit a match to smoke a cigarette. The match ignited gas fumes which had apparently permeated into Googe's residence. Although Googe survived the incident, he endured extensive personal injuries.

UNDERLYING MAIN LITIGATION
On September 12, 1989, Googe filed the main personal injury action below solely against All-Pro and Peoples Gas. Googe thereafter entered into a $2 million settlement with All-Pro's insurance carrier. This settlement, however, released only All-Pro's individual qualifiers and its employees who were dispatched to the scene. The settlement did not, however, release All-Pro itself.[4] Thus, at this point, All-Pro remained a defendant in the main action.
Early on in the litigation, Googe successfully moved for partial summary judgment against Peoples Gas on the issue of whether Peoples Gas had vicarious liability for All-Pro's negligence in failing to make the area of the gas leak safe. Peoples Gas' carrier thereafter settled this case with Googe for $3.5 million. In addition to Peoples Gas, the settlement agreement released All-Pro and its employees and individual qualifiers, as well as all other members of Gas Central. There is no record evidence that appellees ever requested or expected Peoples Gas to procure a release on their behalf. Nor is there record evidence that appellees were even invited to participate in the settlement negotiations or were even aware that they were taking place. Upon the execution of the settlement and release agreement, the main action below was brought to a conclusion.
When the other Gas Central members subsequently refused to contribute to the $3.5 million settlement as requested, Peoples Gas filed the instant third-party action for contribution and/or indemnity against all of the members except All-Pro.[5] Peoples Gas sought contribution against appellees based upon its characterization of Gas Central as a general partnership, joint venture or unincorporated association. It further sought indemnity from appellees based upon the hold harmless agreements executed by each in favor of Peoples Gas. The Gas Central members in this third-party action jointly moved for summary judgment on all issues presented based upon their arguments that: (1) the Riefler call was not a Gas Central matter; *298 (2) the nature of Gas Central did not satisfy the legal requirements necessary to establish liability under a partnership, joint venture or unincorporated association theory; and (3) the express language of the hold harmless agreements executed by each Gas Central member calls for indemnity only from the company whose property was involved in the emergency, which in this case was All-Pro. Shortly thereafter, Peoples Gas sought to amend its third-party complaint to plead three counts of equitable contribution based upon its characterization of Gas Central as a partnership, joint venture or unincorporated association against the Gas Central members. Prior to the hearing on these joint motions, appellees Metrogas, Inc. and Siegal Gas Corp. each filed offers of judgment in the amount of $2,500.00. The trial court granted the joint motions for summary judgment and thereafter entered a judgment awarding Metrogas and Siegal Gas attorney's fees and costs each in the amount of $8,797.55. This appeal was taken from these judgments.

II
Peoples Gas asserts that the entry of summary judgment was error where a genuine issue of material fact remained as to the precise nature of the Gas Central entity (i.e. whether it was a partnership, joint venture or unincorporated association) which could only be determined by a jury. See Spencer v. Young, 63 So.2d 334 (Fla.1953) (stating it is within the province of the factfinder to determine existence of partnership); Knepper v. Genstar Corp., 537 So.2d 619, 622-23 (Fla. 3d DCA 1988) (stating that whether an entity is a joint venture is a question for the jury), rev. denied, 545 So.2d 1367 (Fla.1989). We disagree. We find that the question of whether Gas Central may be deemed a partnership,[6] joint venture[7] or an unincorporated association[8] is really irrelevant in this case. That is because unless the Rieflers' telephone call is deemed a Gas Central emergency, appellees would have no liability to Peoples Gas whether Gas Central is characterized as: (1) a partnership, see §§ 620.62, 620.63(1), Fla. Stat. (1989); Lewis v. Horne, 495 So.2d 780, 781 (Fla. 3d DCA 1986) (where partner not doing partnership business during commission of tort, no liability for remaining partners), rev. denied, 504 So.2d 767 (Fla.1987); Soden v. Starkman, 218 So.2d 763, 764-65 (Fla. 3d DCA 1969) (same); (2) a joint venture, see Florida Rock & Sand Co. v. Cox, 344 So.2d 1296, 1298 (Fla. 3d DCA 1977) (deciding negligence of one joint venturer committed within the scope of the joint venture may be imputed to co-joint adventurers); Florida Tomato Packers, 296 So.2d at 539 (holding that joint adventurers are liable for each other's torts committed within the course and scope of the undertaking); or (3) an unincorporated association, see Guyton v. Howard, 525 So.2d 948, 956 (Fla. 1st DCA 1988) (drawing a distinction between such associations for business purposes and for fraternal or social purposes and finding in the former, individual liability to be governed by partnership law and in the latter, individual liability to be based upon tortious acts which the member individually commits, participates in, or authorizes, assents to or ratifies).
*299 We think that the appropriate inquiry before us is Peoples Gas' next argumentwhether there is any genuine factual issue in the record as to whether Peoples Gas was acting within the scope of its duties for Gas Central when it responded to the Rieflers' telephone call. We conclude that there is not and that summary judgment was properly entered in favor of the appellees. The bare self-serving assertions made by Peoples Gas that it was acting on Gas Central's behalf in the Riefler incident, without more, are insufficient to defeat a summary judgment. E.g., Landers v. Milton, 370 So.2d 368, 370 (Fla.1979); Hernando County v. Budget Inns, Inc., 555 So.2d 1319, 1320 n. 1 (Fla. 5th DCA 1990). Indeed, the record evidence conclusively refutes Peoples Gas' assertions.
First of all, Gas Central was established solely as a centralized emergency response system to calls placed by the police and/or fire departments. It is undisputed that the Riefler call to Peoples Gas was not such a call. The Rieflers' telephone report of the gas leak was made to Peoples Gas' personal telephone number as a result of Peoples Gas' advertisement in the yellow pages. Moreover, there is no record evidence which remotely suggests that appellees ever agreed to treat (or actually treated) consumer reports of gas leaks to Peoples Gas on Peoples Gas' public telephone number as Gas Central emergencies. Hence, there is no record evidence to even create an issue of fact as to Peoples Gas' implicit or apparent authority to so act. See R. 1.510(c), Fla. R. Civ. P.; Landers, 370 So.2d at 370; see also Lewis, 495 So.2d at 781 (approving directed verdict on grounds that tortious activity by partner of defendant was outside scope of partnership business).
The unrefuted evidence also reflects that Peoples Gas' actions at the Rieflers' residence for the most part did not correspond with Gas Central's agreed upon procedures for handling emergency calls. See supra note 2. Although Peoples Gas classified the gas leak as a "Grade 1", it never notified either the fire or police departments of this dangerous condition. Peoples Gas never made the area "safe" as defined in Gas Central's procedures by turning off or disconnecting gas supply. Indeed, contrary to Gas Central's established directive that the designated company make no repairs unless its own lines were involved in the emergency, Peoples Gas attempted to alleviate the gas odor by digging holes in the Riefler's backyard to provide ventilation for the gas fumes. Moreover, and most importantly, none of the appellees had any involvement in this incident. There is thus simply no record evidence to support Peoples Gas' assertion that this was a Gas Central emergency so as to afford it with an opportunity to seek contribution from appellees for discharging a common liability. E.g., Albertson's, Inc. v. Adams, 473 So.2d 231, 233 (Fla. 2d DCA 1985) (stating action for contribution does not lie in absence of joint and several liability), rev. denied, 482 So.2d 347 (Fla.1986); Touche Ross & Co. v. Sun Bank, 366 So.2d 465, 467-68 (Fla. 3d DCA) (denying relief where party seeking contribution was not a joint tortfeasor, nor jointly and severally liable, with the contribution defendant), cert. denied, 378 So.2d 350 (Fla.1979); see also Restatement of Restitution § 86 at 389-90 (1937) (noting need for common liability to trigger right of contribution); accord § 768.31, Fla. Stat. (1991) (providing for statutory contribution among joint tortfeasors).
Moreover, we find that Peoples Gas' claim for indemnity from appellees to be specifically belied by the unambiguous and express language found in each of the hold harmless agreements drafted by Peoples Gas. Even assuming, arguendo, that the Riefler matter could somehow be deemed a Gas Central call, the hold harmless agreements executed between Peoples Gas and each of the appellees call for indemnity only from the gas company whose property was involved in the emergency. In this case that would be only All-Pro. Thus, none of the appellees would be liable for indemnity to Peoples Gas under their respective executed indemnity agreements in any event.
Finally, based upon the undisputed record before the court, we cannot conclude that the trial court abused its discretion when it denied Peoples Gas' request to amend the third party complaint to plead a count for equitable contribution. Cf. Bondu *300 v. Gurvich, 473 So.2d 1307, 1310 n. 2 (Fla. 3d DCA 1984) (stating that abuse of discretion occurs where amendment sought would state a viable claim different than one pleaded in the original complaint), rev. denied, 484 So.2d 7 (Fla.1986).
For these reasons, we affirm the entry of summary judgment.

III
Having concluded that appellees have no liability to Peoples Gas and that summary judgment was appropriately entered, we address Peoples Gas' remaining contention on appeal, that the trial court erred in awarding Metrogas and Siegal Gas attorney's fees and costs. Pursuant to section 768.79(1), Florida Statutes (1991)[9], Metrogas and Siegal Gas each filed offers of judgment for $2,500.00 in this third-party action. Peoples Gas declined to accept either of these offers of judgment. Consequently, when summary judgment was entered in favor of Metrogas and Siegal Gas on the issue of liability, the trial court awarded $8,797.55 as attorney's fees and costs to each of these entities in accordance with that part of section 768.79(1) which states:
[I]f a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by him or on his behalf ... if the judgment is one of no liability....
Peoples Gas nevertheless asserts that this was error pursuant to section 768.79(7)(a)[10] because neither of these offers were made in good faith where both Metrogas and Siegal Gas had reason to know that their meager offers would be rejected by Peoples Gas. Peoples Gas essentially argues that its rejection of both of these offers was reasonable where combined, these offers only totaled approximately ".00142857%" of the $3.5 million settlement amount it sought in its third-party complaint.
Peoples Gas' argument has, however, been specifically rejected by the supreme court's recent decision in Knealing v. Puleo, 675 So.2d 593 (Fla.1996). In Knealing, the court approved the Fourth District's decisions in Puleo v. Knealing, 654 So.2d 148 (Fla. 4th DCA 1995) and Schmidt v. Fortner, 629 So.2d 1036 (Fla. 4th DCA 1993) which held that "the right to an award [of attorney's fees and costs] depends only on the amount of the rejected offer and the amount of the later judgment." 675 So.2d at 595. "[T]he reasonableness of the plaintiff's rejection is irrelevant to the question of fee entitlement." Id. Here, where neither Metrogas or Siegal Gas was found to have any liability to Peoples Gas, they were clearly entitled to recover an award of reasonable attorney's fees and costs pursuant to section 768.79(1). "The obligation of good faith [found in section 768.79(7)(a)] merely insists that the offeror have some reasonable foundation on which to base an offer." Schmidt, 629 So.2d at 1039. We conclude that where the undisputed record strongly indicated that they had no exposure in this case, Metrogas and Siegal Gas had such a reasonable basis to make nominal offers to Peoples Gas. Moreover, the fact that Metrogas and Siegal Gas may have believed that Peoples Gas would reject their nominal offers is not determinative of the issue of good faith:
A mere belief that the figure offered or demanded will not be accepted, on the other hand, does not necessarily suggest to *301 us either the absence of good faith or the presence of bad faithat least where the offeror fully intends to conclude a settlement if the offer or demand is accepted as made, and the amount of the offer or demand is not so widely inconsistent with the known facts of the case as to suggest on its face the sole purpose of creating a right to fees if it is not accepted.
Schmidt, 629 So.2d at 1040 n. 5.
We, therefore, affirm the order awarding attorney's fees and costs to Metrogas and Siegal Gas.
Affirmed.
NOTES
[1] Each such agreement stated in relevant part that:

* * * * * *
WHEREAS, each of the parties are independent gas companies who are members of Gas Central, an informal association, organized as a cooperative effort of all the gas companies in Broward and Dade Counties, State of Florida, for the sole purpose of providing voluntary emergency assistance in these counties, and
WHEREAS, Gas Central provides assistance to area rescue programs specifically assisting police and fire officers in shutting off gas supplies to buildings or areas endangered by fire or other hazards, and
WHEREAS, the telephone for Gas Central is located on the premises of Indemnitee and is answered by its employees and agents, and
WHEREAS, circumstances may require Indemnitee to dispatch one of its own employees on a call made to Gas Central to assist local authorities in shutting off the gas in Indemnitor's gas lines and necessitate Indemnitee's entry upon and operation of Indemnitor's property.
IT IS HEREBY AGREED, in consideration of One Dollar ($1.00) and other valuable consideration paid to Indemnitor by Indemnitee, receipt of which is hereby acknowledged,
1. Indemnitor hereby indemnifies and holds harmless Indemnitee from any and all liability, loss or damage Indemnitee may suffer as a result of any or all claims, demands, costs or judgments against it arising out of the activities of Indemnitee for Gas Central with respect to property of Indemnitor such as real estate, machinery, gas lines, equipment or otherwise, whether the liability loss or damage is caused by, or arises out of, the negligence of Indemnitee or of its officers, agents, employees or otherwise.
2. Indemnitor agrees to defend against any claims brought or actions filed against Indemnitee with respect to the subject of the indemnity contained herein, whether such claims or actions are rightfully or wrongfully brought or filed. In case a claim should be brought or an action filed with respect to the subject of the indemnity herein, Indemnitor agrees it will employ attorneys to appear or defend the claim or action on behalf of the indemnitee at the expense of Indemnitor.
3. Indemnitor agrees to reimburse Indemnitee for any necessary expenses, attorneys fees or other costs incurred in the enforcement of any part of this indemnity agreement thirty (30) days after receiving written notice that Indemnitee has incurred them.
* * * * * *
[2] The relevant procedures required to be followed in handling a Gas Central emergency matter were as follows:

"When a serviceman responds to a Gas Central call, he will:
1. Report on the scene to the fire officer in charge.
2. Make safe (by turning off or disconnecting gas supply).
3. Evaluate the situation and advise Gas Central if additional help or specialized equipment is required to cope with the situation.
4. Advise the fire officer in charge regarding proper handling or protection of gas equipment, the severity of any gas problem that cannot be made immediately safe and any further steps to protect life and property.
The Serviceman will make no investigation or repairs, other than to make safe unless he is employed by the serving gas company. If he represents the serving gas company he will adhere to their policies concerning investigation or repair. In all cases where it is feasible geographically, Gas Central will attempt to dispatch a serviceman from the serving gas company. The responding serviceman will remain on the scene until released by the fire officer in charge."
[3] All-Pro did not bring a C.G.I. or other equipment to the scene to detect the presence of gas.
[4] Googe refused to release All-Pro because he was concerned that a release of All-Pro would foreclose his claim of vicarious liability against Peoples Gas for All-Pro's negligence.
[5] In a separate action not before this court, Peoples Gas is seeking indemnification against All-Pro pursuant to the hold harmless agreement. See supra note 1.
[6] A "partnership" is defined in Florida's adaptation of the Uniform Partnership Act as "an association of two or more persons to carry on a business for profit as co-owners." Myers v. Brown, 296 So.2d 121, 123 (Fla. 1st DCA) (citing § 620.585, Fla. Stat.), cert. denied, 305 So.2d 203 (Fla.1974).
[7] The elements of which have been defined as "(1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." McKissick v. Bilger, 480 So.2d 211, 212 (Fla. 1st DCA 1985) (quoting Kislak v. Kreedian, 95 So.2d 510, 515 (Fla.1957)); Campbell v. Jacksonville Kennel Club, Inc., 66 So.2d 495, 496-97 (Fla.1953); Arango v. Reyka, 507 So.2d 1211, 1212 (Fla. 4th DCA 1987); Navarro v. Espino, 316 So.2d 646, 648 (Fla. 3d DCA 1975); Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536, 539 (Fla. 3d DCA 1974), cert. denied, 327 So.2d 32 (Fla.1976); 8 Fla. Jur.2d, Business Relationships § 682 (1978).
[8] Generally "created and formed by the voluntary action of a number of individuals in associating themselves together under a common name for the accomplishment of some lawful purpose." 4 Fla. Jur.2d Associations & Clubs §§ 1, 2 (1994); see also Penrod Drilling Co. v. Johnson, 414 F.2d 1217, 1222 (5th Cir.1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 495 (1970).
[9] That section provides:

In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by him or on his behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award. Where such costs and attorney's fees total more than the judgment, the court shall enter judgment for the defendant against the plaintiff for the amount of the costs and fees, less the amount of the plaintiff's award.
[10] Section 768.79(7)(a), Florida Statutes (1991) provides that:

If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.